**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Eddie James SCALES, Defendant-Appellant.**

No. 78–5532.

United States Court of Appeals, Fifth Circuit.

July 18, 1979.

---

H. M. Ray, U. S. Atty., Tyree Irving, Alfred E. Moreton, III, Asst. U. S. Attys., Oxford, Miss., for plaintiff-appellee.

Before TUTTLE, GODBOLD and RUBIN, Circuit Judges.

GODBOLD, Circuit Judge:

Scales was convicted after a jury trial of violation of 18 U.S.C. § 922(h), receipt of a firearm by a convicted felon. Prior to trial he moved to suppress evidence of his prior felony conviction—a state court conviction of manslaughter—contending that his plea of guilty to the manslaughter charge was constitutionally invalid. The district judge conducted a hearing on the motion and denied it.

◼ The district court followed correct procedure in granting Scales an opportunity to try to establish that the state conviction, which was an essential element of the federal charge, was invalid under the United States Constitution. *U. S. v. Thoresen*, 428 F.2d 654 (CA9, 1970); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *cf. U. S. v. Martinez*, 413 F.2d 61 (CA7, 1969), and *Williams v. Coiner*, 392 F.2d 210 (CA4, 1968).[1]

◼ There was no error in the district court's finding that Scales had not established that his manslaughter conviction was unconstitutional. Scales' central point is that his appointed lawyer failed to advise him of the availability of self-defense as a defense. Scales took the stand when he entered his guilty plea and related in detail the facts of the killing. He testified that he had been over the facts with his attor-

James D. Waide, III, West Point, Miss. (Court-appointed), for defendant-appellant.

---

1. The district court in this case relied upon *Dameron v. United States*, 488 F.2d 724 (CA5, 1974). This was a collateral attack on a firearms conviction, brought under 28 U.S.C. § 2255, and we reversed the firearms conviction because the underlying state conviction was invalid. *Dameron* did not settle the issue of the procedure to be employed where, in the trial of a firearms case, the defendant questions the validity of an underlying conviction. The authorities which we have cited above do settle this issue.

ney.[2] The short answer to the contention concerning self-defense as a defense is that there was no reason for the lawyer to discuss it with Scales. Scales testified that he had "thoroughly discussed" with his attorney the change of plea. As he described the killing, the victim had previously broken into Scales' house and on another occasion had threatened both Scales and his wife with a gun. On the morning of the killing Scales put a shotgun in his car. During the afternoon, when Scales was shooting pool, the victim, according to Scales, pulled a gun on him. Scales left the building, went outside to his car, got his shotgun, came back in the door of the building, pushed it open, saw the victim with a pistol in one hand and a can of beer in the other and shot him down. Scales testified that his intent when he left the building and when he returned was to shoot and kill the victim. In this context, self-defense was illusory.

■ Scales' other contentions relate to refusal of jury instructions predicated upon his testimony describing the circumstances under which he purchased the firearm covered by the indictment. According to Scales, someone had broken into his house while his wife, eight months pregnant, was there alone. He reported the matter to local police and an officer advised him to get a gun. Using his wife's social security card because he knew it was unlawful for him to possess a firearm, he purchased the gun in his wife's name, took it to his wife who put it in her purse and took it home and placed it in a drawer next to her bed. There it remained for more than two months, accessible to both Scales and his wife. Subsequently, on the advice of his probation officer, Scales turned the pistol in to local police, and he was thereafter indicted on the federal charge. Scales proposed an instruction reciting his version of the purchase and stating that if he never intended to exercise control of the pistol for his own protection but only to deliver it to

his wife, and intended that his wife have exclusive control, he must be found not guilty. He requested another instruction that "receipt" of a firearm required an intent to lay claim to it, to control use and management of it, and to exercise proprietary rights over it, and did not include a mere "innocent handling" of the pistol. A third proposed instruction was to the effect that receipt meant possession and possession meant actual control, care and management and "not a passing control, fleeting and shadowy in its nature."

These issues are controlled by *U. S. v. Hammons*, 566 F.2d 1301 (CA5, 1978). There we noted that § 922(h) prohibits, in absolute terms, the receipt of a firearm by a convicted felon, and that § 925 details the limited exceptions to liability under § 922(h). We noted the Supreme Court's language that the statute "sought broadly to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous. These persons are comprehensively barred by the Act from acquiring firearms by any means." *Barrett v. U. S.*, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). In *Hammons* we pretermitted deciding whether a defense of emergency or exigent circumstances can be judicially read into the otherwise unambiguous terms of the statute, because in no event could the facts involved fall within such a defense, if allowed. In *Hammons* a friend of the defendant brought a pistol into a nightclub and escorted his girl friend outside at pistol point. The defendant, aware of the friend's reputation for violence, followed the couple outside and persuaded the friend to hand over the gun. Defendant reentered the club with the gun still in his possession. When two police officers entered the club about ten minutes later, the defendant attempted to give the gun to a waitress with whom he had been talking, but during this exchange the gun went off and defendant was shot in the buttocks. We held:

---

2. Formerly a United States Commissioner and competent attorney. found by the federal district judge to be a

Defendant admits that he purposefully approached Bridges and took possession of the gun. Moreover, defendant retained possession of the firearm for approximately 10 minutes after reentering the bar, an act which is itself an apparent violation of federal gun control legislation. *See* 18 U.S.C.A. App. § 1202(a). Finally, not until police officers entered the club did defendant attempt to rid himself of the gun, and then he apparently tried to conceal the transfer from the officers. Defendant's continued possession of the gun after the alleged emergency conditions had vanished and the surreptitious manner in which he attempted to transfer it were hardly consistent with his theory of justified or innocent receipt of the firearm. On the whole, the record in this case does not support defendant's contention that the trial court erred in instructing the jury as it did. We express no opinion on whether a different set of facts might support the judicial creation of such a defense to § 922(h).

566 F.2d at 1303–04. The conduct of Scales is even more clearly not within a theory of emergency or exigent circumstances.[3]

The district court did not err in refusing to permit defense counsel to argue to the jury the inapplicable theories of law that were embraced in the refused instructions, discussed above.

AFFIRMED.

---

**3.** We decline to follow various state court decisions cited by Scales in which trial courts were reversed for refusing to give instructions on innocent possession of proscribed firearms. The intention of Congress in enacting the federal statute makes these cases inapplicable.