In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1587

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN D. CONLEY,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 00-CR-17--James T. Moody, Judge.

Argued NOVEMBER 29, 2001--Decided May 23, 2002

Before COFFEY, EASTERBROOK and RIPPLE,
Circuit Judges.

COFFEY, Circuit Judge.  John D. "Spider" Conley is a twice-convicted felon with a self-destructive appetite for guns and motorcycles. Conley's first felony conviction was in 1982, after he and his fellow members of the Satan Calvary bikers gang fired several gun shots at a police officer who was attempting to arrest them for disorderly conduct. Conley was incarcerated for fourteen years for attempted murder and was barred by federal law from possessing any type of firearm after his release from prison. Nevertheless, not long after his parole in December 1995, Conley joined an Indiana chapter of the Invaders motorcycle club, acquired at least six firearms--including two rifles, two shotguns, a pistol and a revolver--and stored them inside his home and a shed on his property in Crown Point, Ind. The possession of these weapons formed the basis of a two-count supserseding federal indictment charging Conley with violating the Armed Career Criminal Act, 18 U.S.C. sec. 922(g)(1). Conley pled not guilty, the case proceeded to trial, and a jury found Conley guilty of both charges. The district court sentenced Conley to 108 months in prison followed by a three-year term of supervised release, with the sentences and subsequent periods of supervision to run concurrently with each

other. The court also ordered Conley to pay a special assessment of $100 on each of the counts, for a total of $200. We affirm.

I.

The superseding indictment in this case specifically charged Conley with: (1) possession of a Mossberg shotgun on July 7, 1999; and (2) possession of the same Mossberg shotgun plus several other firearms on January 27, 2000./1 In order to prove both counts of the indictment, the Government presented evidence establishing that Conley possessed the Mossberg on two separate occasions, i.e., June 7, 1999 and January 27, 2000, and that his possession of the weapon was completely interrupted at some point between June 1999 and January 2000.

The Government proved that Conley's possession of the shotgun was interrupted by offering proof that the weapon was in the sole possession of another man, Dwight "Lightbulb" Sheldon, during the late summer and early fall of 1999. Sheldon, who is one of Conley's friends and a fellow member of the Invaders, testified that he was the sole owner of the shotgun, having purchased it for $100 from a bartender in Kentucky in 1998. Sheldon subsequently traveled to Crown Point, Ind., in the spring of 1999 and moved into a trailer located in Conley's backyard. Sheldon testified at trial that he usually kept the shotgun hidden behind the front seat of his pickup truck or in a toolbox inside the trailer. Under cross-examination, however, Sheldon admitted that he was frequently under the influence of drugs and alcohol. In view of this fact, Sheldon conceded that he may have given the weapon to Conley in early July 1999 and asked Conley to return it sometime thereafter. Indeed, several witnesses confirmed that Conley fired the Mossberg in order to scare away a group of teenagers, who were present on Conley's property July 7, 1999 in order to collect a debt owed them by a friend of Conley's son, who was staying at Conley's home that evening. Sheldon reacquired the shotgun later in the summer and remained in possession of the weapon until the fall, when he abandoned the firearm somewhere on Conley's property and moved out of state.

A number of federal agents testified that they discovered the shotgun inside Conley's padlocked storage shed when they searched his property pursuant to a warrant executed the afternoon of January 27, 2000. On that occasion, Conley gave a key to the agents and told them that his wife and children had been ordered to keep out of the structure. He admitted that he kept some of his most valuable possessions inside the shed, including photographs of himself riding his beloved Harley-Davidson motorcycle across the vast midwestern prairie. The agents further uncovered several additional photographs depicting Conley holding as many as six firearms, including a Thompson machine gun.

The preceding evidence, which we presume was accepted and believed by the jury, served to convict Conley of obtaining possession of the Mossberg firearm on or around the date charged in Count I of the indictment (July 7, 1999) then completely losing such control before reacquiring it by the date charged in Count II of the indictment (January 27, 2000)./2 Conley now appeals, arguing: (1) that the indictment was multiplicitous; and (2) that the trial court erred by admitting certain photographs that Conley feels are unfairly prejudicial./3

II.

Conley's first challenge is that the two-count indictment under which he was convicted is multiplicitous because it charged him with a single course of conduct, rather than two separate offenses. Conley argues that the indictment charged and convicted him on two counts of possession of the Mossberg shotgun without alleging that his possession was interrupted, as is required by the statute. Based on this argument, Conley asks us to vacate one of his convictions as violating the Double Jeopardy Clause of the Fifth Amendment. (Br. at 12.) We decline to do so, because we are convinced that the indictment adequately identified the nature of the separate charges facing Conley so as to comport with the requirements of the Double Jeopardy Clause.

A.

1.

At the outset, we reject Conley's claim that he raised the issue of multiplicity in the district court, for upon review of the record we are convinced that he failed to argue that the indictment was multiplicitous but instead raised only the separate and distinct issue of whether the indictment was duplicitive. Thus we review Conley's present challenge for plain error./4

The sole support for Conley's claim that he preserved the multiplicity argument lies in the final sentence in a 9-paragraph affidavit in support of his "Motion For Election Of Separate Trials," wherein Conley's attorney informed the magistrate judge assigned to hear pre-trial matters that: "Count Two is duplicative, and not a separate count at all. It does not allege a separate distinct firearm possessed by the defendant, but if proved, continued evidence of possession of one of the six firearms alleged in Count One."

In order to preserve an issue for appellate review, "a party must make a timely and specific objection, in order that he or she might alert the court and the opposing party as to the specific grounds for the objection during trial." United States v. Harris, 271 F.3d 690, 700 (7th Cir. 2001) (emphasis in original). We hold that Conley's passing reference to duplicity was insufficient to challenge the indictment on the separate ground of multiplicity, for Conley failed to cite any case law or elaborate in any detail upon why he felt the indictment improperly charged him with the same crime in two separate counts. Cf. United States v. Petitjean, 883 F.2d 1341, 1344 (7th Cir. 1989) (holding that objections to multiplicity are insufficient to preserve subsequent claim of duplicity). But see 24 Moore's Federal Practice sec. 608.04[3] at 22 (2000) (noting that "multiplicity is sometimes referred to as duplicity"). Notwithstanding the above-quoted statement in the affidavit, each of the affidavit's remaining eight paragraphs argued that Conley was prejudiced by the joinder of the indictment in two counts. Conley's trial counsel asked for separate trials on each count of the indictment, Fed. R. Crim. P. 14, because his client

wished to testify on Count II but invoke his Fifth Amendment rights on Count I. When the Government filed its brief in opposition to Conley's Rule 14 motion, it argued that the "motion for severance should be denied." The magistrate judge similarly focused on the issue of severance and found that Conley was not entitled to separate trials because he failed to indicate how he might possibly be prejudiced if he was to testify on Count II of the indictment but declined to testify on Count I. (Doc. No. 44.) Because Conley never informed the judge that he was raising the issue of multiplicity, rather than duplicity or prejudicial joinder, we conclude that Conley waived any argument about the allegedly multiplicitous nature of the indictment, and we shall review for plain error alone. See United States v. Wisch, 275 F.3d 620, 624-26 (7th Cir. 2001).

It is well-established that the plain error standard allows appellate courts to correct only particularly egregious errors for the purpose of preventing a miscarriage of justice. United States v. Lieberman, 128 F.3d 1085, 1095 (7th Cir. 1997). The error must have affected the substantial rights of the parties, thus calling into question the fairness, integrity, or public reputation of the judicial process. United States v. Montenegro, 231 F.3d 389, 393 (7th Cir. 2000). Put another way, under the plain error doctrine, we will reverse only where the trial court's error is "clear, prejudicial, and affects substantial rights." United States v. Carrillo, 269 F.3d 761, 768 (7th Cir. 2001). However, even if there has been plain error, "we have the power to correct the error but are not required to do so." United States v. Cusimano, 148 F.3d 824, 828 (7th Cir. 1998).

2.

As noted previously, Conley argues that the indictment violates his rights against multiple punishments for the same crime. The imposition of more than one conviction for the same criminal act violates the Double Jeopardy Clause of the Fifth Amendment. Shiro v. Farley, 510 U.S. 222, 229 (1994); United States v. Colvin, 276 F.3d 945, 948 (7th Cir. 2002); United States v. Handford, 39 F.3d 731, 735 (7th Cir. 1994). In this case,

the Government concedes that Congress intended that persons convicted of violating 18 U.S.C. sec. 922(g)(1) should be punished only for possessing weapons in separate courses of conduct. Thus, under circumstances similar to this case, a felon may be charged and convicted of two counts of possessing the same firearm only if: (1) he possesses the weapon; (2) he is aware that his possession of the weapon has been interrupted; and (3) he thereafter reacquires possession of the weapon himself. United States v. Rivera, 77 F.3d 1348 (11th Cir. 1996); United States v. Horodner, 993 F.2d 191 (9th Cir. 1993); United States v. Jones, 533 F.2d 1387 (6th Cir. 1976); see also United States v. Capozzi, 73 F. Supp.2d 75, 82 (D. Mass. 1999). Put another way, the Government may charge and convict an individual of multiple violations of sec. 922(g)(1) only if "it can produce evidence demonstrating that the firearms were stored or acquired separately and at different times or places." United States v. Buchmeier, 255 F.3d 415, 423 (7th Cir. 2001); see also Horodner, 993 F.2d at 193 ("a new possession, separately chargeable, could begin if possession was interrupted").

In asking whether an indictment is multiplicative, we typically ask "whether each count requires proof of a fact which the other does not. If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." United States v. Briscoe, 896 F.2d 1476, 1522 (7th Cir. 1990)(quoting United States v. Marquardt, 786 F.2d 771, 778 (7th Cir. 1986) (internal citations and quotations omitted)). The two separate counts of the indictment before us explicitly alleged that Conley possessed the Mossberg shotgun during two different periods of time--July 7, 1999 and January 27, 2000. In order to prove Count I, the Government had to establish possession on July 7 but not January 27; conversely, to prove Count II, the Government had to establish possession on January 27 but not July 7. Because the Government was required to convince the jury beyond a reasonable doubt of Conley's possession of the shotgun on two separate dates, as two distinct courses of conduct, the Government established the elements of two separate crimes. Thus, the indictment

is not multiplicitous. See United States v. Snyder, 189 F.3d 640, 647 (7th Cir. 1999) ("The Double Jeopardy Clause is not implicated when multiple separate violations of the same provision are charged in multiple counts."); 1A Wright, Federal Practice & Procedure sec. 142 (1999).

Nonetheless, at oral argument, defense counsel insisted that the indictment was insufficient because it failed to expressly state that Conley's possession of the shotgun was interrupted at some point between July 1999 and January 2000. Conley, however, has failed to cite any cases in support of his claim that an indictment listing successive dates of unlawful possession of a weapon must expressly state that the two dates have been interrupted by an intervening lack of possession. We reject Conley's argument, for on numerous occasions we have sustained convictions that were obtained on multi-count indictments, charging separate courses of unlawful conduct, despite the fact that the indictments failed to allege that each course was interrupted. See, e.g., United States v. Stott, 245 F.3d 890, 896 n.2 (7th Cir. 2001) (interstate travel with intent to distribute); Marquardt, 786 F.2d at 774 (bank fraud).

The cardinal rule for reading multi-count indictments is that each count must stand on its own two feet; "[e]ach count . . . is regarded as if it was a separate indictment." United States v. Powell, 469 U.S. 57, 62 (1984) (quoting Dunn v. United States, 284 U.S. 390, 393 (1932)); United States v. Sims, 144 F.3d 1082, 1085 (7th Cir. 1998). Thus, when an indictment charges two violations of 18 U.S.C. sec. 922(g)(1), on two specific dates, it follows that the defendant has been notified of the Government's intent to prosecute him for unlawfully possessing a weapon in two separate courses of conduct. Furthermore, in this case, the interruption of possession was an element of neither of the offenses charged in the indictment. Conley could have been convicted on either one of the charges without any proof of interruption, because if Conley possessed the weapon in a continuous course of conduct beginning in July 1999 and continuing through January 2000, he would have been guilty of only one crime. Rivera, 77 F.3d at 1351; Horodner, 993

F.2d at 193. Therefore, although interruption was another fact that the Government was required to prove in order to obtain successful convictions on more than one count, it was not necessary to allege this fact in any of the counts in the indictment itself. Accordingly, we reject Conley's claim that his convictions were tainted by a multiplicitous indictment. See, e.g., United States v. Smith, 230 F.3d 300, 305-06 & n.3 (7th Cir. 2000); United States v. Canino, 949 F.2d 928, 949 (7th Cir. 1992).

B.

We next consider whether the trial court erred in admitting two photographs found in Conley's shed, which depicted him holding several weapons other than the Mossberg shotgun that was named in the indictment. The photographs were admitted by the Government during its rebuttal, after numerous defense witnesses testified that the Mossberg shotgun belonged to Conley's wife and friends and that Conley studiously avoided handling firearms or other weapons around his home. The first photograph depicted Conley with a smile on his face and six firearms strapped to his waist, arms, and legs. The second photograph showed Conley with a menacing frown, staring straight into the camera and brandishing a Thompson machine gun. Conley argues that the photographs should have been excluded, for their probative value was slight and they tended to portray him in a prejudicial light as a "gun-toting lawbreaker." The Government responds that the photos helped prove that Conley had "the power and intention . . . to exercise dominion and control" over the weapons on or about the dates charged in the indictment. United States v. Hunte, 196 F.3d 687, 692 (7th Cir. 1999). We agree with the Government's argument that the photos were relevant to the issue of dominion and control, and therefore we perceive no abuse of discretion with the trial judge's decision to admit them into the record of this case.

1.

We review the court's evidentiary rulings for an abuse of discretion. United States v. Hunt, 272 F.3d 488, 494 (7th Cir. 2001); United States v.

Dominguez, 992 F.2d 678, 680-81 (7th Cir. 1993). "The district court's determination of the admissibility of evidence is treated with great deference because of the trial judge's firsthand exposure to the witnesses and the evidence as a whole, and because of his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceedings." Okai v. Verfuth, 275 F.3d 606, 610 (7th Cir. 2001). "Because of the special deference we give to the trial judge's evidentiary rulings, we will not reverse unless the record contains no evidence on which [the trial judge] rationally could have based [his] decision." Id.

2.

Evidence of a defendant's prior bad acts is inadmissible under Rule 404(b) of the Federal Rules of Evidence if it is offered to demonstrate that the defendant's conduct on or about the dates alleged in the indictment conformed to his previous behavior when he was placed in similar situations. Such evidence is admissible only if it is relevant to an understanding of the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in committing the offenses charged. Fed. R. Evid. 404(b). District courts should employ a four-part test when considering whether to admit evidence of this nature. As we stated in United States v. Moore:

The evidence of the other act must: (1) be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) show that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) be sufficient to support a jury finding that the defendant committed the similar act; and (4) have a probative value that is not substantially outweighed by the danger of unfair prejudice.

115 F.3d 1348, 1354 (7th Cir. 1997).

Conley argues that the two pictures in dispute both fail the second and fourth prongs of the Moore test. With respect to the second prong, Conley claims that the guns were used as props for staged

photographs, an act which differs significantly from the Government's claim that Conley exercised constructive possession over six functioning firearms in the Conley residence. Conley further contends that the pictures are irrelevant because they demonstrate nothing more than the fact that he momentarily possessed the weapons. As for the fourth prong, Conley states that the probative value of the photographs was substantially outweighed by the potential that the jury would conclude that he was a "gun-toting lawbreaker" and, thereafter, convict him based on irrational prejudice rather than the evidence presented at trial.

We disagree with each of Conley's arguments. Minor or insubstantial differences in the type of conduct or charge at issue fails to establish that the conduct is dissimilar. United States v. Long, 86 F.3d 81, 84 (7th Cir. 1995). Guns do not belong in the hands of felons. Our case law makes clear that an individual convicted of a felony violates sec. 922(g)(1) whenever he is in possession and physical control of a weapon for more than an "academic" period of time, United States v. Lane, 267 F.3d 715, 718 (7th Cir. 2001), even if he lacks the specific intent to use the weapon for criminal purposes. Id. at 720. In addition, we have repeatedly held that evidence is unfairly prejudicial only if it will "induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." United States v. Pulido, 69 F.3d 192, 201 (7th Cir. 1995).

In this case, because the photos showed Conley in actual possession of a bevy of weapons, we are convinced that the evidence was relevant to the issue of whether Conley remained in constructive possession of other similar weapons while they remained in his home or on his property. The determination of the proper weight of such evidence was left to the jury's sound discretion, after hearing the court's instructions regarding the applicable law and evaluating the arguments of both the Government and the defendant at trial. Given the great degree of deference afforded the judge's evidentiary determinations--and the judge's caution in admitting the photos only in rebuttal to the testimony of ten

defense witnesses--we find no abuse of discretion with the court's careful and well-reasoned conclusion that any prejudicial effect was outweighed by the probative value of the photographs in demonstrating Conley's intent to exercise control over firearms listed in the indictment.

The judgment of the district court is AFFIRMED.

FOOTNOTES

/1 The superseding indictment reads as follows:

COUNT ONE: On or about July 7, 1999, in the Northern District of Indiana, the defendant, JOHN CONLEY, having been convicted of attempted murder and robbery in Case No. 4-CR-128881546 on or about April 6, 1982 in Lake County, Ind., a crime which is punishable by a term of imprisonment exceeding one year, did knowingly possess in or affecting commerce a firearm, specifically, a Mossberg Model 500A 12-gauge shotgun with an obliterated serial number--in violation of 18 U.S.C. sec. 922(g)(1).

COUNT TWO: On or about January 27, 2000, in the Northern District of Indiana, the defendant, JOHN CONLEY, having been convicted of attempted murder and robbery in Case No. 4-CR-128881546 on or about April 6, 1982 in Lake County, Ind., a crime which is punishable by a term of imprisonment exceeding one year, did knowingly possess in or affecting commerce, the following firearms: (1) a Mossberg Model 500A 12-gauge shotgun, with an obliterated serial number . . . in violation of 18 U.S.C. sec. 922(g)(1).

/2 At oral argument, defense counsel suggested in passing that, as a matter of law, Conley remained in continuous, constructive possession over the shotgun because it remained on his property without interruption throughout the time period charged in the separate counts of the indictment. Such a position is inconsistent with our prior holdings that a defendant's mere presence within a dwelling is insufficient evidence, standing alone, to establish constructive possession of contraband within the dwelling. See, e.g., United States v. Quilling, 261 F.3d 707, 712 (7th Cir. 2001) (citing United States v. Herrera, 757 F.2d 144, 150 (7th Cir. 1985)).

/3 At oral argument, we pointed out that Conley's trial counsel failed to request a jury instruction that Conley could be found guilty of two counts of possessing the Mossberg shotgun only if the Government presented evidence that Conley was

aware he lost and subsequently reacquired possession of the weapon some time between the dates listed in each count of the indictment. Although Conley attacked the jury instruction during oral argument, we decline to consider his objections because they were neither presented to the district court nor contained in any of his briefs on appeal. See, e.g., Holman v. State, 211 F.3d 399, 406 (7th Cir. 2000) ("Moreover, the Holmans did not make this argument in their initial appellate brief . . . and thus it is waived."); IUOE Local 150 v. Rabine, 161 F.3d 427, 432 (7th Cir. 1998) (refusing to consider argument raised at oral argument because it was not raised in briefs); Kasper v. St. Mary of Nazareth Hosp., 135 F.3d 1170, 1174 (7th Cir. 1998) ("the alleged error on which the hospital's appellate counsel laid the heaviest weight at oral argument does not appear in the hospital's opening brief . . . and is therefore waived."); Charles v. Daley, 846 F.2d 1057, 1059 n.1 (7th Cir. 1988) ("a party is barred procedurally from raising for the first time on appeal an argument it failed to include in its Opening Brief").

/4 Multiplicity is the charging of a single offense in separate counts of an indictment. United States v. Allender, 62 F.3d 909, 912 (7th Cir. 1995). Duplicity, by contrast, is the joining of two or more separate offenses in a single count of an indictment. United States v. Smith, 26 F.3d 739, 753 (7th Cir. 1993).