In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-3918

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

IRON MATTHEWS,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 280—**Matthew F. Kennelly**, *Judge.*

———————

ARGUED NOVEMBER 9, 2007—DECIDED APRIL 1, 2008

———————

Before CUDAHY, RIPPLE and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Iron Matthews was convicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On appeal, Mr. Matthews challenges his conviction on the ground that the district court committed instructional error. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

# BACKGROUND

## A. Facts

In March 2005, Lamont Williams was arrested by local police for possession of a rifle, which Williams had intended to give to Mr. Matthews in exchange for cocaine. Williams agreed to cooperate with the police and become an informant for the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). At the behest of ATF agents, Williams called Mr. Matthews to inform him that he (Williams) had sold the rifle, but that he had three other firearms to sell. Mr. Matthews indicated interest, but he wanted more information about the firearms. After receiving additional information, Mr. Matthews noted that the firearms described by Williams could be useful "on the block." Tr. at 132.

Over the next two days, Williams made multiple telephone calls to Mr. Matthews to facilitate the transaction, all of which were recorded by the ATF. Williams agreed to pick up Mr. Matthews and take him to a Walgreen's parking lot where the parties could make the exchange of weapons for crack cocaine. An undercover ATF agent was waiting in the Walgreen's parking lot for Williams and Mr. Matthews; in the trunk of the agent's car was a toolbox holding the three ATF-owned firearms that Williams had described to Mr. Matthews.

Mr. Matthews met with the agent. During this meeting, the agent opened the trunk of his vehicle and told Mr. Matthews that he should look at the firearms. At that time, Mr. Matthews picked up each one of the three firearms for a few seconds to inspect it. Mr. Matthews then told the agent that "you will want three zips then,"

meaning three ounces of cocaine for the firearms. Tr. at 66. Mr. Matthews did not take the firearms at that time; he stated that the weapons were for his "guy" and that he had nothing of value to trade for them at that point. Tr. at 82. After the conversation, agents arrested Mr. Matthews. Following his arrest, Mr. Matthews gave a statement to the police in which he admitted to picking up and handling each of the firearms; his statement also included the following acknowledgment: "I know I broke the law just by touching the guns." Tr. at 83.

## B. District Court Proceedings

Mr. Matthews was charged in a single count indictment for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).[1] At trial, the Government proffered the following instruction:

> Possession of an object is the ability to control it. Possession exists when an individual holds an object, in this case a firearm, even if the handling is only momentary, as long as the individual does so knowingly and intends to handle the object. A person need not own an object to possess it.

---

[1] 18 U.S.C. § 922(g) states in relevant part that it shall be unlawful for any person "who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

R.21 at 23. The defendant proffered a different instruction on "possession" that required that the firearm be "loaded and operable." Tr. at 165. The Government objected to Mr. Matthews' proposed instruction as inconsistent with *United States v. Lane*, 267 F.3d 715 (7th Cir. 2001), in which we upheld a defendant's conviction under section 922(g) based on the defendant's possession of an unloaded firearm.

The district court fashioned its own jury instruction as follows:

> Possession of an object is the ability to control it. Possession exists when an individual holds an object as long as the individual does so knowingly and intends to handle the object. Possession may also exist when a person is not in physical control of the object but knowingly has the power and intention to exercise direction or control over it either directly or through others. A person can possess an object without owning the object provided that the person has the power and intention to control the object.

Tr. at 200. After hearing the evidence and the instructions, the jury returned a verdict against Mr. Matthews.

## II

### ANALYSIS

Mr. Matthews' sole argument on appeal is that the district court erred when it refused to give his proffered instruction on possession. We review alleged instructional error for an abuse of discretion. *United States v. Kosth*, 257 F.3d 712, 717 (7th Cir. 2001). In conducting our review, we ask whether the instruction "fairly and

accurately summarize[s]" the law and has "support in the record." *Id*.

Mr. Matthews maintains that the district court abused its discretion in refusing his proffered instruction. According to Mr. Matthews, this court's case law, which holds that momentary possession of a weapon violates section 922, presupposes a loaded and operable weapon. The reason, continues Mr. Matthews, that the court has held momentary possession to be sufficient is that so little time is needed to fire a weapon. However, if the weapon is not loaded, a momentary possession does not carry with it the same threat of danger. Because the weapons he held were not loaded, Mr. Matthews concludes, his inspection of the weapons was not sufficient to establish possession under the law. Mr. Matthews points to *United States v. Kitchen*, 57 F.3d 516 (7th Cir. 1995), *United States v. Lane*, 267 F.3d 715 (7th Cir. 2001), and *United States v. Hendricks*, 319 F.3d 993 (7th Cir. 2003), as support for his argument.

In *Kitchen*, the defendant had been convicted of possession of cocaine. The facts established that, during a sting operation, Kitchen had agreed to purchase cocaine from undercover officers. When he went to inspect the cocaine, Kitchen picked up one of the kilos for two or three seconds and then commented that he was concerned about the purity of the cocaine. He then was placed under arrest and later was convicted of possession of the cocaine. On appeal, Kitchen challenged the sufficiency of the evidence supporting his drug conviction. The Government maintained that actual possession is established if a defendant picks a controlled substance up for a fleeting moment. We disagreed. We stated that, in order to possess narcotics, the Government must establish

"some sort of unequivocal conduct or assent to the transaction," which was missing in the present case. *Kitchen*, 57 F.3d at 523. However, in requiring this type of action to establish possession of narcotics, we noted that we were "not attempt[ing] to use the present case to formulate a rule workable for all circumstances." *Id.*

We later distinguished the circumstances in *Kitchen* from the facts presented in *United States v. Lane*, 267 F.3d 715 (7th Cir. 2001). In *Lane*, the defendant, a convicted felon, purchased a gun for his girlfriend. Before purchasing it, Lane removed the gun from its box, held it and inspected it. Based on this action, Lane was convicted of being a felon in possession of a firearm. On appeal, he maintained that he had not "possessed" the gun and relied on *Kitchen* for the proposition that a momentary possession was not sufficient to establish possession under the law. We disagreed:

> There is a marked difference between the steps necessary to exercise control over drugs and those necessary to control a gun. To deal with the "growing menace of drug abuse in the United States," H.R.Rep. No. 91-1444, at 1 (1970), 1970 U.S.C.C.A.N. 4566, Congress made it illegal to possess drugs with the intent to distribute them. To obtain control over drugs in this context, a defendant needs more than just mere physical contact; he must have the perceived right among the criminals with whom he is interacting to deal, use, transport, or otherwise control what happens to the drugs. *See Kitchen*, 57 F.3d at 524. Such control is not a foregone conclusion when a defendant's sole physical contact with drugs is momentary inspection of drugs he does not own or over which he did not have recognized authority. . . .

In contrast to drugs, it is much easier to obtain control and therefore possession of a gun in the context of 18 U.S.C. § 922(g)(1). Congress originally passed this law as the Federal Firearms Act of 1938 "to 'prevent the crook and gangster, racketeer and fugitive from justice from being able to purchase *or in any way come in contact* with firearms of any kind.'" *Barrett v. United States*, 423 U.S. 212, 220 (1975) (quoting S.Rep. No. 1189, at 33 (1937)). Throughout this Act's subsequent history, this purpose has remained constant. *See* S.Rep. No. 90-1501, at 22 (1968); H.R.Rep. No. 99-495, at 1-3. *From the purpose of the Act, it is reasonable to infer that Congress intended to prohibit felons from exercising any physical control over a gun.*

Physical control over a gun is remarkably easy to effect. Once the gun is in the defendant's hands he need only pull the trigger, an act which can be completed in a split second and which is controlled and influenced by nothing more than the defendant's whim. . . . Felons handling guns, unlike defendants who have touched drugs, do not need recognition of their authority or any extra element to obtain the ability to shoot the gun. Lane had just as much control over the gun when he inspected it while it belonged to Bowen as he would have if he as the gun's owner took aim at a rabbit. Because a defendant can shoot a gun so quickly and easily once he holds it in his hands, we conclude that evidence showing that a felon held a gun is by itself a "factor indicating that the defendant had the ability to exercise direct control over the [firearm]." The distinction between holding a gun and obtaining control over a gun as required to prove possession is academic.

267 F.3d at 718 (emphasis added; parallel citations omitted). Consequently, we concluded that "holding a firearm establishes possession as a matter of law in the context of a charge under 18 U.S.C. § 922(g)(1)." *Id.* at 719. We further explained that "[t]his holding depends heavily on both the purpose of the law in question and on the physical nature of guns." *Id.*

Finally, in *Hendricks*, the defendant had been convicted of violating section 922. The testimony at trial established that Hendricks had discovered a gun in the car that he and his girlfriend had stolen. Hendricks had found the gun under the seat of the car, had held it momentarily and then had placed it back under the seat. After his conviction, he argued that, "although he held the firearm momentarily, he did so only for an 'academic' period of time, which is insufficient to establish guilt under § 922(g)(1)." *Id.* at 1005. We rejected this argument:

> Mr. Hendricks relies primarily on *United States v. Conley*, 291 F.3d 464 (7th Cir. 2002), to support his argument. In *Conley*, we stated in dicta that "[o]ur case law makes clear that an individual convicted of a felony violates § 922(g)(1) whenever he is in possession and physical control of a weapon for more than an 'academic' period of time, even if he lacks the specific intent to use the weapon for criminal purposes." *Id.* at 473 (quoting *United States v. Lane*, 267 F.3d 715, 718 (7th Cir. 2001)). Mr. Hendricks' reliance on this statement is misplaced. Although we gave no precise definition to the term "academic" in *Conley*, a fair reading of the reference in the context of the court's discussion leaves no doubt that the court was of the view that even a very brief possession of a firearm is sufficient to convict under § 922(g)(1).

Furthermore, the court used the term "academic" based on a passage from *United States v. Lane*, 267 F.3d 715 (7th Cir. 2001), which undermines, rather than supports, Mr. Hendricks' position.

In *Lane*, this court stated: "Because a defendant can shoot a gun so quickly and easily once he holds it in his hands, we conclude that evidence showing that a felon held a gun is by itself 'a factor indicating that the defendant had the ability to exercise direct control over the [firearm].'" *Id.* at 718 (alteration in original). The court then stated that "[t]he distinction between holding a gun and obtaining control over a gun as required to prove possession is academic." *Id.* Fairly read, this passage suggests that, when a felon holds a firearm, he is in possession of the firearm, and any distinction between the two would be purely academic, in the sense of theoretical (existing only in concept and not in reality).

319 F.3d at 1005.

As noted above, Mr. Matthews believes that these cases establish that the "momentary" possession rule evolved because of the ease with which weapons can be discharged. He further contends that, when there is no threat of imminent danger from the weapon—either because it has not been loaded with ammunition or because it has been disabled in some manner—the rule should not apply.

We cannot agree with Mr. Matthews' reading of the statute and the case law interpreting it. The above cases make clear that the ability to fire a weapon is only one rationale supporting the "momentary" possession rule. We explained in *Lane* that the purpose of the Federal

Firearms Act was to prevent criminals "in any way from com[ing] in contact with firearms of any kind." 267 F.3d at 718. When the Act was amended in 1968, Congress reiterated that

> [t]he principal purposes of this act are to make it possible to keep firearms out of the hands of those not legally entitled to posses them because of age, criminal background or incompetency, and to assist law enforcement authorities in the States and their subdivisions in combating the increasing prevalence of crime in the United States.

S.Rep. No. 90-1501, at 22 (1968). To this end, section 922 extensively regulates the purchase and sale of firearms. *See, e.g.*, 18 U.S.C. § 922(a) (prohibiting the import, manufacture, sale or transport of firearms other than by those specifically licensed to do so); *id.* § 922(c) (requiring a purchaser of firearms to sign a sworn statement as to the purchaser's competency and legal right to purchase firearms). It prohibits those who have been convicted of a felony from "ship[ping] or transport[ing]," "possess[ing]," or "receiv[ing]" any firearm. *Id.* § 922(g). Additionally, the prohibitions not only apply to firearms, but also to ammunition. *See id.* In short, Congress sought to divorce completely convicted felons from the use or possession of weapons and from the weapons trade.

Here, Mr. Matthews' conviction gives effect to this statutory purpose. Mr. Matthews, a convicted felon, willingly came into contact with the firearms, taking them into his hands and inspecting them for the purpose of arranging a sale. The conduct in which Mr. Matthews engaged is precisely what section 922 was meant to prevent.

Besides *Kitchen*, *Lane* and *Hendricks*, Mr. Matthews does not come forward with any other case law from this court—or any other court—to support his proffered instruction that momentary possession of an unloaded weapon does not violate section 922(g), and we have located none. By contrast, the cases that we have found strongly suggest that the other courts of appeals also would reject Mr. Matthews' arguments. *See*, *e.g.*, *United States v. Johnson*, 459 F.3d 990, 997-98 (9th Cir. 2006) (rejecting the proffered instruction on an innocent possession defense as contrary to Congress' purpose "to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society" (internal citations and quotation marks omitted)); *United States v. Teemer*, 394 F.3d 59, 63-64 (1st Cir. 2005) (rejecting a proffered instruction that would require the jury to acquit the defendant if possession was "fleeting" or "transitory" and noting that "[t]he statute bans possession outright without regard to how great a danger exists of misuse in the particular case").

Both *Lane* and *Hendricks* establish that merely holding a firearm for a brief period of time is sufficient to constitute possession within the meaning of section 922. This rule prevents felons from coming into contact with firearms, thus giving effect to one of the purposes of section 922. The district court's refusal to add another requirement—that the firearm be loaded and operable—was consistent with this court's case law and the purpose of section 922. Thus, the district court did not abuse its discretion in rejecting Mr. Matthews' proffered instruction.

## Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED