**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Monte Dale THOMPSON,
Defendant–Appellant.**

Nos. 93–8405, 93–8813.

United States Court of Appeals,
Eleventh Circuit.

July 20, 1994.

---

F. Robert Raley, Macon, GA, for appellant.

Edgar Ennis, U.S. Atty., Dixie A. Morrow, Asst. U.S. Atty., Macon, GA, for appellee.

Before ANDERSON and BIRCH, Circuit Judges, and ATKINS *, Senior District Judge.

ATKINS, Senior District Judge:

## I. INTRODUCTION

Defendant–Appellant Monte Dale Thompson ("Thompson") appeals his conviction for various firearms offenses. Thompson stipulated to possessing firearms, to being a convicted felon and to signing the firearms transaction records which falsely stated that he was not a convicted felon, all the facts necessary to convict him of the crimes charged.

Thompson's appeal stems from his understanding that he had been granted immunity for these crimes. Thompson appeals on three grounds: (1) the district court erred in denying Thompson's motion to dismiss the indictment because Thompson had been granted immunity from prosecution; (2) the district court erred in precluding Thompson from presenting his defense of entrapment by estoppel by granting the government's motion in limine to exclude any reference to the alleged grant of immunity; and, (3) the district court erred in refusing to instruct the jury on Thompson's defense of entrapment by estoppel.

We hold that the district court did not abuse its discretion in denying the motion to dismiss. However, the district court erred when it granted the government's motion in limine and effectively prohibited Thompson from presenting his theory of defense. Finally, since the district court did not permit Thompson to present any evidence of his defense of entrapment by estoppel, the district court did not abuse its discretion in refusing to give a theory of defense charge. Therefore, we affirm in part, reverse in part and remand for new trial.

## II. PROCEDURAL HISTORY

Thompson was indicted on January 30, 1992. He was charged with five (5) counts of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1), in connection with Title 18, United States Code, Section 924(e). Thompson was also charged with two (2) counts of making a false and fictitious statement to a firearms dealer, in violation of Title 18, United States Code, Section 922(a)(6), in connection with Title 18, United States Code, Section 924(a). All of the alleged incidents for which Thompson was charged occurred in the years 1987 through 1989.

Thompson filed a motion to dismiss the indictment on April 1, 1992.[1] The basis of the motion was an alleged oral grant of immunity to Thompson by Assistant United States Attorney ("AUSA") Miriam Duke in exchange for his testimony in other criminal cases. In support of the motion, Thompson alleged that the AUSA had possessed the information necessary to indict him for the offenses charged here for some time. However, the AUSA chose not to bring the information to the grand jury until Thompson's testimony in other cases was no longer useful.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Thompson also filed a motion to dismiss the indictment for abuse of prosecutorial discretion on February 9, 1993. In support of this motion, Thompson alleged that at the time of the charged offenses he was assisting a combined task force of local and federal law enforcement agencies in the investigation of suspected local narcotics dealers. As a direct result of Thompson's assistance, several people were arrested, prosecuted and convicted. The motion was further supported by a memorandum issued by Attorney General Dick Thornburgh on June 16, 1989, which stated that federal prosecutors were to seek vigorously conviction for any offenses involving the unlawful use of a firearm, except in cases where the defendant had provided substantial assistance to the government in the investigation of crimes committed by others. This motion was never ruled upon, but is not, apparently, the subject of this appeal, except as the facts alleged in support of the motion may relate to Thompson's alleged grant of immunity and his defense of entrapment by estoppel.

On April 29, 1992, in response to the motion, the government proffered the facts surrounding Thompson's testimony before a federal grand jury in April, 1989, in the case of *United States v. Milton Dobbin Evans,* Crim. No. 89-42-MAC(WDO). Thompson offered no evidence in support of his motion, other than the vague allegations noted above. The district court summarily denied Thompson's motion to dismiss the indictment on May 15, 1992.

On February 8, 1993, the government filed a motion in limine seeking to prohibit the defense from presenting any evidence of the reason for Thompson's possession of the firearms, including any reference to Thompson's alleged grant of immunity. The basis for the motion was relevance; the government argued that since § 922 involves a strict liability offense, the reason for Thompson's possession was irrelevant.

■ In response to the motion in limine, Thompson asserted his intention to present the defense of entrapment by estoppel.[2] This defense consisted, basically, of allegations that Thompson had been led to believe by law enforcement officers that he was allowed to possess firearms, or at least would not be prosecuted for possessing them. The district court granted the government's motion in limine at a pre-trial conference on February 10, 1993, effectively prohibiting Thompson from presenting his defense of entrapment by estoppel.

On February 22, 1993, Thompson reasserted his objection to the government's motion in limine and urged the district court to admit evidence of entrapment by estoppel. After the selection of the jury, the district court permitted Thompson to make a factual proffer, *in camera,* to support his defense. Thompson testified at length under oath, describing that he had been granted immunity from prosecution of the offenses charged in exchange for his assistance in various investigations of crimes committed by others. After listening to Thompson's testimony, and considering the law cited in the parties'

briefs on the issue, the district court denied Thompson's request to raise the defense of entrapment by estoppel and prohibited him from presenting any evidence related to that defense.

Thompson was tried by a jury on the same day the district court refused his request to assert the defense of entrapment by estoppel. Thompson stipulated to his possession of the firearms, to his prior convictions and to signing the firearms transaction records— all the facts necessary to convict Thompson of the charged violations. Thompson was convicted of four of the possession violations; the fifth was dismissed by the government. Thompson was also convicted of the two counts of making a false statement to a firearms dealer.

Subsequent to his conviction, Thompson filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial, based on the judge's refusal to allow the presentation of the entrapment by estoppel defense. The motion was denied on March 24, 1993. Thompson timely filed his Notice of Appeal on March 29, 1993.

## III. FACTS

At various times from 1987 to 1989, Thompson possessed and pawned several firearms. Thompson stipulated to these facts. R1:59-1-3. Thompson also stipulated that he signed the firearms transaction records which falsely stated that he had not been previously convicted of a felony when he pawned the firearms. R1:59-2. Thompson further stipulated that all of the firearms he possessed were shipped or transported in interstate commerce prior to his possession. R1:59-1.

At the time Thompson possessed the firearms, he had previously been convicted in the Superior Court of Clayton County, Georgia, of armed robbery; in the Superior Court of Houston County, Georgia, of armed robbery; and in the Superior Court of Bibb

---

**2.** Entrapment by estoppel is an affirmative defense which, unlike the defense of entrapment, focuses on the actions of government officials and not on the defendant's predisposition. *Unit-*

*ed States v. Hedges,* 912 F.2d 1397, 1405 (11th Cir.1990). The defense applies "when an official tells a defendant that certain conduct is legal and the defendant believes that official." *Id.*

**1562**

County, Georgia, of armed robbery. Thompson also stipulated to these facts. R1:59–1.

Prior to being indicted for the offenses charged in this case, Thompson worked as an undercover informant for various local and federal law enforcement agencies in Georgia. R1:48–1. Thompson's task was to help gather evidence of crimes committed by others. *Id.* As a result, Thompson began to feel strong ties to the law enforcement community.

It was during the period in which Thompson was working with local and federal officials that Thompson formed the belief that he had been granted immunity from prosecution by AUSA Duke. R2:13. Thompson allegedly met with Federal Bureau of Investigation ("FBI") Agent Michael Twibell and several Alcohol, Tobacco and Firearms ("ATF") agents in AUSA Duke's office sometime in 1985 or 1986. R2:12. At that meeting, Thompson claims he was informed by Duke that he would be given immunity for any crimes committed, with the exception of murder. R2:18. Allegedly, Thompson was given immunity in exchange for his testimony and assistance in investigating the crimes of others. R2:19–20. As a result of the meeting in AUSA Duke's office, Thompson believed that he was immune from prosecution for crimes committed, including firearms possessions. According to Thompson, FBI Agent Twibell even gave Thompson a firearm on one occasion. R2:28.

## IV. ANALYSIS

### A. Motion to Dismiss

Thompson filed the motion to dismiss the indictment based on the alleged oral grant of immunity the AUSA gave him. Thompson argues that the AUSA led him to believe that he would not be prosecuted for any crimes committed, short of murder, in exchange for his testimony and assistance in the investigation of crimes by others. Therefore, an informal immunity agreement allegedly existed between Thompson and AUSA Duke. Thompson asserts that his testimony was not necessary in other cases due to the guilty pleas of the defendants Thompson was to testify against. However, Thompson did assist in at least one investigation and testified before a grand jury in the case of *United States v. Milton Dobbin Evans,* Crim. No. 89–42–MAC(WDO). R1:19. Thompson maintains that as a result of his testimony in the *Evans* case, he performed his part of the immunity agreement. Consequently, Thompson argues that the government was bound to uphold its part of the immunity agreement and was barred from prosecuting Thompson in this case.

The government admits that Thompson testified before the grand jury in the *Evans* case. R1:19. Nevertheless, the government asserts that no immunity agreement existed between Thompson and itself. The AUSA and the local and federal agents involved in the *Evans* case deny that Thompson was promised immunity in exchange for his testimony. R1:19–2–3.

■ The district court summarily denied the motion to dismiss; no reasons for the denial were given. Nevertheless, when a district court denies a motion to dismiss the indictment, this court only reviews the denial for abuse of discretion. *United States v. Chica,* 14 F.3d 1527, 1530 (11th Cir.1994) (citing *United States v. Bradley,* 905 F.2d 1482, 1489 (11th Cir.1990), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 969, 112 L.Ed.2d 1055 (1991)).

■ The government does not contest that prosecutors may enter into informal immunity agreements with criminal defendants. *See United States v. Weaver,* 905 F.2d 1466, 1472 (11th Cir.1990); *United States v. Harvey,* 869 F.2d 1439, 1444 (11th Cir.1989). When such an agreement is made, "due process requires the government to adhere to the terms of [that agreement]." *Harvey,* 869 F.2d at 1443–1444. In determining the extent of immunity afforded a defendant under an immunity agreement, a court should apply basic principles of contract law. *Weaver,* 905 F.2d at 1472 (citing *Rowe v. Griffin,* 676 F.2d 524, 528 (11th Cir.1982)).

■ Applying basic contract principles to the alleged grant of immunity here, in order to dismiss the indictment, the district court would have had to find that an agreement existed, that Thompson had substantially

performed his part of the bargain, and that the government had breached the clear terms of the agreement. *See generally id.* The motion to dismiss was denied on May 15, 1992, at which time the only evidence in support of a grant of immunity was Thompson's conclusory statements that such an agreement existed. R1:16.[3] Thus, at the time the motion to dismiss was denied, the district court did not have sufficient evidence to construe the terms of any agreement, if one existed. This is not to mention the fact that the district court did not have sufficient evidence to determine whether Thompson had complied with the terms of any agreement and whether the government had breached the agreement. Consequently, the district court did not abuse its discretion in denying Thompson's motion to dismiss the indictment.

## B. Entrapment by Estoppel Defense

Normally, in reviewing a district court's grant of a government's motion in limine, the standard is abuse of discretion. *United States v. Thompson,* 976 F.2d 666, 671 (11th Cir.1992). However, the district court, in granting the government's motion in limine, reached the legal conclusion that entrapment by estoppel is not a permissible defense in § 922 cases. R2:36. Additionally, the district court reached the conclusion that Thompson's factual proffer did not give rise to a defense to a § 922 violation. *Id.* Conclusions of law are reviewed *de novo. United States v. Goolsby,* 908 F.2d 861, 863 (11th Cir.1990); *United States v. Alexander,* 835 F.2d 1406, 1408 (11th Cir.1988). Findings of fact made by the district court, however, "shall not be set aside unless clearly erroneous." *United States v. Quartermaine,* 913 F.2d 910, 915 (11th Cir.1990). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is

left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

The district court ruled that Thompson's entrapment by estoppel defense was not a permissible defense to a charge of possession of a firearm by a convicted felon. R2:36. That simply is not true.

It is generally true that motive or intent is irrelevant with respect to strict liability offenses. *Dees v. United States,* 789 F.2d 1521 (11th Cir.1986).[4] However, the Supreme Court and various circuits have carved out exceptions to that general rule. *E.g., Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (stating that a felon who has been expressly entrusted with the possession of a firearm by prison authority, who has been pardoned and expressly granted authority to possess a firearm, who had previous conviction vacated, and a defendant who has consent to his possession by Secretary of the Treasury, all may assert a defense to a § 922 charge); *United States v. Billue,* 994 F.2d 1562 (11th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 939, 127 L.Ed.2d 230 (1994) (entrapment by estoppel serves as a defense to a § 922 charge where government official tells defendant that certain conduct is legal, defendant relies on that representation in engaging in that conduct and subsequently is prosecuted for it); *United States v. Hedges,* 912 F.2d 1397 (11th Cir.1990) (entrapment by estoppel is a viable defense to a strict liability offense); *United States v. Tallmadge,* 829 F.2d 767 (9th Cir.1987) (defendant who had been told by federal official that he could legally possess firearm because his prior felony had been reduced to a misdemeanor could rely on defense of entrapment by estoppel).[5]

---

**3.** Thompson did not make his extensive factual proffer regarding his understanding of the immunity grant until February 22, 1993, well after the district court denied the motion to dismiss.

**4.** Title 18, United States Code, § 922(g)(1) makes it a crime for a convicted felon to possess a firearm. It is a strict liability offense, in that no scienter is required. *See id.*

**5.** The government relies on *Dees* in support of its argument that the defense of entrapment by estoppel does not apply in § 922 cases. In light of the above-cited cases, the government's reliance on *Dees* is misplaced. First, *Billue* directly contradicts that argument. 994 F.2d 1562; *see discussion infra.* Second, *Dees* does not hold that entrapment by estoppel is not a viable defense in § 922 cases. *See* 789 F.2d 1521. Rather, that case merely discussed some defenses to § 922

■ Title 18, United States Code, § 922 involves a strict liability offense which ordinarily renders the defendant's state of mind irrelevant. However, the defense of entrapment by estoppel focuses on the conduct of the government officials, not on the state of mind of the defendant. *Hedges,* 912 F.2d at 1405. "[E]ntrapment by estoppel applies when an official tells a defendant that certain conduct is legal and the defendant believes that official." *Id.* (citing *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); *United States v. Tallmadge,* 829 F.2d 767 (9th Cir.1987); *United States v. Clegg,* 846 F.2d 1221 (9th Cir.1988)). Because the defense of entrapment by estoppel "rests upon principles of fairness ... it may be raised even in strict liability offense cases." *Id.* (citing *Tallmadge,* 829 F.2d at 773). To disallow such a defense to be presented "would be to sanction an indefensible sort of entrapment by the State." *Cox,* 379 U.S. at 571, 85 S.Ct. at 484 (citing *Raley,* 360 U.S. 423, 79 S.Ct. 1257).

■ In applying these basic principles, this circuit has held that the defense of entrapment by estoppel may prevent a defendant from being convicted of a § 922 offense.

offenses; it did not purport to include an exhaustive list of defenses to a § 922 charge. *See id.*

6. *Billue* was decided after the trial in this case. However, the holding in *Billue*—that the defense of entrapment by estoppel may apply in § 922 cases—did not state a brand new principle of law. Rather, the court in *Billue* merely applied the rule of *Hedges* to the specific facts before it— namely a § 922 offense. 994 F.2d 1562.

7. The court in *Baptista–Rodriguez* went on to note that while this circuit "generally has recognized the defense of entrapment by estoppel, (citation omitted), one panel has stated in dictum that such a defense is foreclosed when a defendant claims he believed he was working on behalf of the government in an intelligence gathering capacity." *Baptista,* 17 F.3d at 1368, n. 18 (citing *United States v. Reyes–Vasquez,* 905 F.2d 1497, 1500 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2869, 115 L.Ed.2d 1035 (1991)). Unfortunately, the statement in *Baptista–Rodriguez* is more general than the statement in *Reyes– Vasquez.* Consequently, without examining *Reyes–Vasquez,* it may appear from note 18 in *Baptista–Rodriguez* that Thompson is foreclosed from presenting his defense.

*Billue,* 994 F.2d 1562.[6] Therefore, the district court was in error when it ruled that the defense of entrapment by estoppel is inapplicable in § 922 cases. To the contrary, the defense of entrapment by estoppel is a viable defense in § 922 cases. *Id.*

■ Working from this rule, the next inquiry is whether Thompson should have been permitted to present evidence of his theory of defense to the jury. Generally, courts should not prohibit a defendant from presenting a theory of defense to the jury. Nevertheless, the court recognizes that some relevant factual basis for the defense should exist under Federal Rules of Evidence 401 and 402 before evidence or testimony is offered. If Thompson's *in camera* testimony had no relevance to his theory of defense, then it may have been proper to prohibit him from presenting evidence of entrapment by estoppel to the jury. Fed.R.Evid. 401, 402; *See generally United States v. Baptista–Rodriguez,* 17 F.3d 1354, n. 18 (11th Cir.1994) (noting that confusion can arise when determining relevancy issues in cases involving defenses based on perceived governmental authority, including "innocent intent," "public authority" and "entrapment by estoppel" defenses).[7]

However, *Reyes–Vasquez* and the case upon which the court in *Reyes–Vasquez* relied, *United States v. Rosenthal,* 793 F.2d 1214 (11th Cir. 1986), are distinguishable from the case at hand. Both of those cases dealt with a very particular set of circumstances with which this court is not faced. Specifically, the defendants in *Reyes–Vasquez* and *Rosenthal* claimed that they were working for the CIA in drug sting operations. The defendants in both cases stated that they believed the CIA had the authority to authorize defendants' drug violations as part of the investigations.

While these circumstances seem eerily similar to the factual proffer Thompson made in this case, *see* discussion below, there is one critical distinction that renders *Reyes–Vasquez* and *Rosenthal* inapplicable here: the reason the *Reyes–Vasquez* court and the *Rosenthal* court precluded the defendants from presenting their "CIA defense" is that the *CIA never has the authority to authorize narcotics violations. Reyes–Vasquez,* 905 F.2d at 1499; *Rosenthal,* 793 F.2d at 1236. Therefore, the defendants made a mistake of law—which can never be a viable defense—as to the CIA's authority. *See Rosenthal,* 793 F.2d at 1235.

The government in this case has never argued that the law enforcement officials Thompson al-

However, the question of the extent of a grant of immunity, i.e., in this case, whether it included the possession of a firearm, is generally a question of fact for the jury. *United States v. Cross,* 928 F.2d 1030, 1045 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 594, 116 L.Ed.2d 618 (1991). Therefore, if there was any basis to support the theory that Thompson had been told he could possess a firearm, the jury should have been permitted to hear the testimony and weigh the evidence itself. Even if Thompson's testimony regarding the alleged immunity agreement was not credible, as the government asserts and the district court found, it is the jury's, not the district court's, function to determine questions of credibility and assess Thompson's testimony. *Billue,* 994 F.2d at 1565 (citing *United States v. Parrado,* 911 F.2d 1567, 1571 (11th Cir.1990)); *United States v. Hewitt,* 663 F.2d 1381, 1385 (11th Cir.1981).

Thompson's factual proffer in support of his theory of defense, while not the most convincing testimony, was not so incredible as to render it irrelevant in this case.[8] For instance, Thompson testified that he had been sent by the ATF or other law enforcement officers to the pawn shop where he pawned various firearms. R2:4–5, 28. Next, Thompson testified that he had been hired by various government officials to "get" some drug dealers. R2:8. His "participation would be just like the 'Wise Guy' off of t.v. ... just like ... having a badge, other than without having a badge." *Id.* He further testified that when he brought guns to the pawn shop, he was doing what he was told to do by the government agents. R2:10, 34. In fact, Thompson testified that FBI agent Mike Twibell even gave him a gun and told him to protect himself because the people

Thompson was assisting the law enforcement officers in investigating were dangerous. R2:28. Finally, Thompson testified that he had been granted immunity for crimes committed, short of murder, in connection with his assistance in the investigations. R2:13, 18.

It is evident from Thompson's testimony that he had some connection with law enforcement officers, both state and federal, a fact which the government does not dispute. Therefore, it is possible that one or more law enforcement officers told Thompson it was all right for him to possess a firearm, instructed him to carry guns to the pawn shop, or granted him immunity. *At the very least,* Thompson should have been given the opportunity to present his defense to the jury, in order to permit the jury to perform its function and assess the credibility of Thompson's defense. *See e.g., Billue,* 994 F.2d at 1565. The district court denied Thompson this opportunity. Therefore, the district court erred in granting the government's motion in limine to exclude as irrelevant evidence of the reasons for Thompson's possession of the firearms.[9]

AFFIRMED in part, REVERSED in part. REMANDED for new trial.

---

legedly worked with did not have the authority to grant him immunity for the firearms violations, nor to permit Thompson to possess a firearm despite his past felony convictions. Rather, the government's main contention is simply that entrapment by estoppel is not a viable defense to a strict liability offense.. As discussed above, that argument fails.

8. At the outset, the court notes that psychiatric evaluations show that Thompson suffered organic brain damage in 1981 or 1982. R2:37. Further, Thompson testified that he was nervous when he testified *in camera.* R2:11. Both of

those factors can affect one's testimony in a negative way, but it is traditionally for the jury to assess the effect those factors may have on one's testimony. *See Gunning v. Cooley,* 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720 (1930); *Billue,* 994 F.2d at 1565.

9. Our remanding this case for a new trial because Thompson was not allowed to present evidence of his entrapment by estoppel defense moots our addressing the district court's refusal to instruct on this defense.