[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16 2000
THOMAS K. KAHN
CLERK

_____

No. 99-13232
Non-Argument Calendar

_____

D. C. Docket No. 98-00189-CR-001

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WESLEY LEE BELL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(June 16, 2000)**

Before TJOFLAT and BARKETT, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

Defendant Wesley Lee Bell appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He argues that the

district court erred in not allowing him to introduce evidence supporting a justification defense. According to Bell's proffer, he possessed the firearm to protect himself against individuals who had shot at and threatened him several days earlier. We affirm on the ground that the facts proffered were insufficient to establish a justification defense.

Although defendant uses the term "necessity" to describe his defense, cases such as this are typically analyzed in terms of the broader defense of justification. We review Bell's evidence, therefore, to determine whether it is sufficient to make out a defense of justification. *See United States v. Deleveaux*, 205 F.3d 1292, 1295-96 n.2 (11ᵗʰ Cir. 2000), *petition for cert. filed*, No. 99-8842 (U.S. March 24, 2000); *United States v. Gomez*, 92 F.3d 770, 774 (9th Cir. 1996); *United States v. Newcomb*, 6 F.3d 1129, 1133 (6th Cir. 1993).

The criminal offense of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) is a strict liability offense, which ordinarily renders a defendant's state of mind irrelevant. *See United States v. Funches,* 135 F.3d 1405, 1407 (11th Cir. 1998); *United States v. Thompson,* 25 F.3d 1558, 1563-64 (11th Cir. 1994). We stated in *Deleveaux*, however, that a justification defense to a § 922(g)(1) charge would be established if the defendant could show the following four elements: (1) that the defendant was under an unlawful and present, imminent, and impending threat of

2

death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm. *See* 205 F.3d at 1297-98 (holding that evidence warranted jury instruction on justification defense and that defendant properly was required to prove defense by preponderance of the evidence).

The defense, however, is reserved for "extraordinary circumstances." *See Deleveaux*, 205 F.3d at 1298. The first prong requires nothing less than an immediate emergency. In *United States v. Parker*, 566 F.2d 1304, 1305-06 (5th Cir. 1978)[1], the defendant retained possession of a gun for thirty minutes after being attacked in his home. In *United States v. Scales*, 599 F.2d 78, 80 (5th Cir. 1978), the defendant purchased a gun and gave it to his wife after their home had been burglarized. In neither of these cases was the defense of justification established. *See Parker*, 566 F.2d at 1306-07; *Scales*, 599 F.2d at 81.

Similarly, other circuits do not allow a justification defense to a § 922(g)(1) prosecution in the absence of an immediate emergency. *Compare, e.g., United States*

_____

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*v. Newcomb*, 6 F.3d 1129, 1135-36, 1138 (6th Cir. 1993) (justification defense allowed where defendant briefly possessed shotgun and shells after disarming dangerous individual), *United States v. Paolello*, 951 F.2d 537, 541-43 (3rd Cir. 1991) (justification defense allowed where, after knocking gun out of attacker's hand to protect third person, defendant picked gun up off ground and ran with it to prevent attacker from getting it), *and United States v. Panter*, 688 F.2d 268, 269-72 (5th Cir. 1982) (defendant, who while pinned to floor after being stabbed in stomach reached for club in self defense but instead grabbed gun, allowed to assert justification defense to prosecution under predecessor statute to § 922(g)(1)), *with United States v. Wofford*, 122 F.3d 787, 790-91 (9th Cir. 1997) (no justification defense where most recent specific threat occurred five months before possession of firearm), *and United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995) (no defense where shotgun-wielding antagonist's most recent visit to defendant's apartment occurred two days prior to defendant's possession of firearm).

The facts, as proffered by the defendant, do not meet the standard of an immediate emergency. On July 26, 1997, Bell, a convicted felon, was playing cards with five others at his home. They heard gunshots, went outside, and saw Bell's neighbor, Anthony Brooks, running towards them. Brooks was being pursued by a man firing a pistol in the direction of Bell's house. When Brooks reached Bell's

4

house, he stated that "a couple of dudes had jumped on him," which prompted Bell and the other card players to accompany Brooks outside, though all were unarmed. Outside, the group was fired upon by a number of assailants. When one of the assailants stopped to reload a shotgun, Bell managed to take the shotgun away from her, and Bell's brother took a shotgun away from a different assailant. After the melee, Bell gave one of the two shotguns to the police, but kept the other. Later that evening, the assailants returned, "shooting and getting out of their cars and making threats."

In the days following the attack, Bell "felt that [the assailants] could come back at any time," and his state of mind was "one of fear." Four days later, during a search by police of Bell's apartment pursuant to a warrant, Bell handed over the second shotgun.

There was no error in the district court's determination that Bell failed to establish a justification defense. Bell possessed a firearm in the absence of an "unlawful and present, imminent, and impending threat of death or serious bodily injury." *Deleveaux*, 205 F.3d at 1297; *see Parker*, 566 F.2d at 1306-07; *Scales*, 599 F.2d at 80. He possessed the shotgun for a least three full days following the last overt threat--the return of the assailants to his house the evening of July 26, 1997. In *Parker*, however, the defendant who possessed a shotgun for only *thirty minutes* after

5

being attacked at home failed to establish a defense. *See* 566 F.2d at 1306-07. Bell's situation in the days following July 26, 1997 was not an immediate emergency, unlike the perilous situations in other cases where firearm possession was held to be justified. *See, e.g., Newcomb*, 6 F.3d at 1135-36, 1138; *Paolello*, 951 F.2d at 541-43; *Panter*, 688 F.2d at 269-72.

*United States v. Gomez*, 92 F.3d 770 (9th Cir. 1996), cited by Bell, is distinguishable. The defendant in *Gomez*, a witness in the prosecution of a major drug dealer, learned that a contract had been taken out on his life and received numerous death threats. The defendant knew that the drug dealer had previously tried to have other witnesses against him murdered. After the authorities ignored the defendant's pleas for protection, the defendant armed himself. *See* 92 F.3d at 772-73. The court held that the danger was "present and immediate," emphasizing that "it was unlikely that [the drug dealer] would cool off and lose interest" in the defendant, given that the drug dealer "was deeply involved in the exportation of illegal substances," and had "amply demonstrated his willingness to kill to avoid conviction." 92 F.3d at 776. The defendant in *Gomez*, therefore, was confronted by an extraordinary threat, as later cases have explained:

> [O]nly in the most extraordinary circumstances, illustrated by *United States v. Gomez*, where the defendant had sought protection from the authorities without success, will the defense entitle the ex-felon to arm

6

himself in advance of the crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm.

*United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996); *see Wofford*, 122 F.3d at 791 (*quoting Perez*).

The generalized danger to Bell was not "extraordinary" as in *Gomez*. Among other things, there was no evidence that the assailants had a compelling motive to attack Bell again, that they could have located him had he simply moved, or that the authorities were unwilling to protect Bell.

Because Bell has not shown that his possession of the firearm occurred only while faced with an "unlawful and present, imminent, and impending threat of death or serious bodily injury," *Deleveaux*, 205 F.3d at 1297, he failed to establish a justification defense. There was no error in excluding the proffered evidence.[2]

AFFIRMED.

---

[2] We decided a similar case today, *United States of America v. Rice*, No. 99-4106 (11th Cir. June 16, 2000), holding that the defendant failed to proffer facts supporting a justification defense to an 18 U.S.C. § 922(g)(1) prosecution.