[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16473
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 1, 2010
JOHN LEY
CLERK

D. C. Docket No. 09-00094-CG-M

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARLON RAYFORD WADE, II,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(October 1, 2010)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

After a jury trial, Defendant Marlon Rayford Wade II appeals his conviction

for knowingly and intentionally possessing with the intent to distribute one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

Nathaniel Agee is an informant to the FBI and local authorities in Mobile, Alabama. In October 2008, Agee was arrested and charged with attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2. He pled guilty and agreed to cooperate with authorities.

On April 15, 2009, FBI Task Force Agent (TFA) John Nixon recorded five cellular telephone calls between Wade and Agee during which they worked out the details of a cocaine sale. Wade and Agee agreed that Wade would exchange a 2001 Ford Expedition and a 9mm handgun for one kilogram of cocaine. Wade told Agee that he was going to resell the kilogram of cocaine to his attorney, and that once he delivered the cocaine to the attorney, he would get the remainder of the money to purchase the cocaine. After Wade sold the cocaine, the car title, but not the handgun, would be returned to Wade.

Wade and Agee arranged to meet at the McDonald's on Dauphin Street in Mobile on April 16, 2009. Wade told Agee that (1) he would bring the vehicle title

and the handgun, and (2) if Agee went through with the transaction, Wade would have the rest of the money by Sunday. On April 16, 2009, TFA Nixon equipped Agee and his vehicle with recording equipment. Nixon gave Agee one kilogram of cocaine, placed in a plastic bag, and then in the toolbox in Agee's truck. Agee was kept under surveillance and followed to the McDonald's on Dauphin Street.

At the McDonald's, Wade parked his vehicle next to Agee's pickup truck. Wade left his vehicle carrying a large manila envelope that appeared to contain a handgun. Wade then got into Agee's truck where he exchanged the vehicle title and handgun for the kilogram of cocaine, worth approximately $19,000. Wade exited Agee's truck and attempted to conceal the cocaine by wrapping it in a newspaper. Wade entered his vehicle and attempted to back out of the parking space, but police blocked Wade's vehicle. The kilogram of cocaine was recovered from the passenger seat of Wade's vehicle.

Wade was arrested and read his Miranda[1] rights. Wade stated that he understood his rights and was willing to make a statement without an attorney present. Wade told one of the FBI Agents that (1) he was purchasing the cocaine for the president of a bank, (2) he was going to give the cocaine to middleman Danny Miller, (3) Miller would distribute the cocaine to the buyer, and (4) Miller

---

[1]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

would pay Wade once the cocaine was delivered.

Wade was charged with (1) knowingly and intentionally possessing with the intent to distribute one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (2) knowingly using, carrying, and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).[2]

## B.    Government's Motion as to Public Authority Defense

Prior to trial, Wade filed a notice of his intent rely on a public authority defense.  Wade alleged that, when he carried out the cocaine sale, he was working undercover on behalf of Officer Kenny Matthews of the Police Department in Saraland, Alabama (the "SPD").  The government filed a motion in limine to prohibit Wade from raising a public authority defense.

The district court held an evidentiary hearing at which Officer Matthews testified as follows.  Officer Matthews was a patrol officer for the SPD, had no authority to work on cases in Mobile, did not work undercover drug cases, and did not handle informants in undercover drug cases.  Officer Matthews had known Defendant Wade most of his life because Wade was friends with Matthews' brother.  A few months prior, Officer Matthews had a conversation with Wade, who said he believed that some of his neighbors were "cooking methamphetamines

---

[2]The firearm was the handgun Wade gave to Agee.

and, you know, he would like for us to do something about it." Officer Matthews treated the conversation as a "citizen complaint." He did not write up Wade as an informant and did not consider Wade to be an informant. Wade did not engage in any undercover activity as to metamphetamine activity in Saraland, nor was Wade a witness in connection with the methamphetamine case.

Shortly before Wade's arrest, Officer Matthews talked with Wade regarding a "subject" that was "moving . . . about four kilograms of cocaine a week, and that he wanted us to start working it." Wade did not provide Officer Matthews with a location or the name of the person dealing cocaine. Wade did not ask whether he could work undercover. Officer Matthews told Wade he would try to contact a narcotics officer regarding the cocaine, but "[n]othing ever developed" and he had no further contact with Wade regarding the cocaine. Matthews did not consider Wade to be acting in an informant capacity when Wade passed along information about the "subject" moving four kilograms of cocaine, he was not present when Wade was arrested, he was unaware that Wade was going to purchase a kilogram of cocaine, and he did not authorize him to do so. Matthews had no authority (1) to authorize undercover drug activity, or (2) to approve conduct that would violate federal law.

On cross-examination, Officer Matthews testified that he had "[p]robably"

5

had conversations with Wade about Matthews becoming a DEA agent. Officer Matthews denied talking with Wade about how the prior 26 arrests from the methamphetamine house were not sufficient to get Officer Matthews into the DEA. Matthews did speak with Wade about metamphetamine arrests, and told Wade that "we made a bunch" of arrests. Matthews had "several" conversations with Wade about the methamphetamine activity in the house down the street from Wade. Matthews and Wade watched the house from Wade's porch for about an hour and a half one Sunday morning. After watching the house, Matthews told Wade: "if he saw anything going on, give me a call. . . . I asked him to call us any time he saw any activity going over there, same as I would any other citizen that had a complaint." As to the cocaine, Wade told Officer Matthews: "I'm going to make you officer of the year if we make this bust." Matthews also stated that Wade "wanted to set up a deal. I told him I would get in touch with our Narcotics Unit," but "nothing ever developed of it."

Sergeant James Keith Phillips, Officer Matthews' supervisor, testified that Matthews had no authority to work on undercover drug cases or work with undercover drug informants. Phillips and Matthews did not have any authority to conduct drug investigations in Mobile or to break federal law. Sergeant Phillips did not authorize Wade to do any undercover activity. Phillips did not know

6

anything about the relationship between Wade and Matthews.

As outlined later, the public authority defense requires a government agent to have actual authority to authorize the defendant to perform the acts in question, which it is undisputed Matthews did not have. The district court orally granted the government's motion in limine, stating:

> I will grant the [g]overnment's motion in limine to restrict any comment or questions before the jury with regard to the defense of public authority unless and until the Defendant carries whatever burden there is here to demonstrate to the Court that the defense applies.
>
> So, any argument to the jury in opening statement, any comment to the jury or any questions with regard to the public – the defense of public authority are restricted unless and until the Defendant puts on evidence to show or to carry the day with regard to the offense of public authority as that defense is defined by law.

The district court told the defense that "anything that would insinuate that your client had authority to make a drug deal in Mobile is restricted unless and until you make your case for application of that defense."

In a subsequent written order, the district court noted that: (1) Officer Matthews and Sergeant Phillips testified that Matthews had no actual authority to allow Wade to participate in an undercover drug sale, and (2) Wade had identified no other basis on which to establish that Matthews had such authority. The district court's order prohibited the defendant, his counsel, and witnesses "from raising or

7

mentioning a public authority defense (by that or any other name) unless and until he carries his threshold burden under Anton."[3]

## C.    Trial

On the day of trial, and outside of the jury's presence, the government reiterated its objection to Wade's counsel discussing the public authority defense during opening statements.  The defense asserted that it was planning to present Wade's testimony about his conversation with Officer Matthews as part of an "innocent intent" defense to show that Wade was planning to obtain the drugs from Agee and then deliver them to Matthews in order to have Agee arrested.  The district court stated that the defense could not "make any representation to the jury that [Wade] had any authority from the police department to do what he did." However, the district court stated that the defense had the right to present an innocent intent defense.

During trial, Wade testified in his defense.  Wade testified that: (1) he did not intend to distribute the cocaine he obtained on April 16, 2009, and (2) he intended to give the cocaine to Officer Matthews because Agee had called him several times trying to sell cocaine.  Wade also testified that: (1) he began having telephone conversations with Officer Matthews beginning in early 2008, (2) he

---

[3]United States v. Anton, 546 F.3d 1355 (11th Cir. 2008), cert. denied, 129 S. Ct. 2033 (2009).

called Matthews because "[p]eople kept coming and knocking on my door in the middle of the night, mistaking my house for the drug house next door . . . . ," and (3) after Agee began contacting Wade to sell cocaine, he called Agee back "[t]o set him up with Kenny Matthews, the Saraland police officer, to bust him for selling drugs and [for] him to go to jail." The court sustained, however, the government's hearsay objection to Wade testifying about the substance of Wade's conversations with Officer Matthews.

The defense also called Officer Matthews, who testified as follows. Officer Matthews had known Wade between fifteen and eighteen years. In late 2008, Wade called him "several times" and told him about methamphetamine activity going on at a residence up the street from Wade's house. Matthews went to Wade's house and watched the residence from Wade's porch. As a result of Wade's phone calls, "[s]everal" arrests were made at the residence up the street from Wade's house. Matthews never told Wade that Wade was his "informant."

Matthews admitted having a telephone conversation with Wade, possibly in April of 2009. The district court again sustained the government's hearsay objections as to Matthews' testimony regarding the substance of that phone conversation. After having the telephone conversation with Wade, Matthews attempted to contact Drug Officer Llewellyn Spencer in the Saraland Police

Department. Sergeant Phillips later testified that Officer Llewellyn Spencer is a narcotics officer for the City of Saraland.

On the government's cross-examination Officer Matthews testified that he does not do undercover work, that he had no jurisdiction to work in Mobile, and that he did not ever consider Wade an informant. Matthews further testified that Wade did not act undercover in the methamphetamine case, and that he considered Wade's report as to the methamphetamine activity to be a "citizen complaint." Matthews did not authorize Wade to purchase a kilogram of cocaine or take any action undercover, did not know Wade was planning to purchase cocaine, did not provide him with a tape recorder or any undercover buy money, and did not surveil the purchase on April 16, 2009.

During closing arguments, Wade's counsel argued to the jury that Wade's plan was to buy the cocaine from Agee, take it to Officer Matthews, and set up a time to deliver the purchase money to Agee and have the police arrest Agee.

On July 17, 2009, the jury convicted Wade for possession with intent to distribute cocaine but found him not guilty on the firearm charge. The district court sentenced Wade to 90 months' imprisonment.

**D.    Wade's Motion for a New Trial**

Although Wade does not appeal his sentence, he moved for a new trial based

in part on Agee's testimony at Agee's sentencing, which differed from Agee's testimony at Wade's trial.

At Agee's sentencing hearing on August 11, 2009, Agee stated that he had one daughter. The same day as the sentencing hearing, the prosecutor[4] wrote a letter to Wade's trial counsel stating, "During Wade's trial you asked Nathaniel Agee something about a child and Agee said that he did not have children, if I am recalling this correctly. Today, during Agee's sentencing hearing, he told Judge Steele that he had a daughter."[5]

The district court denied Wade's motion on the merits. Wade filed a renewed motion for a new trial based in part on the same arguments, which the district court again denied.

## II.  DISCUSSION

A.    **Public Authority Defense**

Wade contends that the district court erred in granting the government's

---

[4]The Assistant United States Attorney that prosecuted Wade also prosecuted Agee.

[5]During trial, the defense asked Agee if he told Wade that the reason he wanted to "get out of the dope business was because you had a daughter and you didn't want to have to go back to prison" and wanted to do "real work" like Wade. Agee replied no. The defense then asked Agee if he had a daughter. Agee responded, "No, sir," to which Wade's counsel responded "You don't?" Agee responded, "I have no kids, sir."

motion in limine as to his public authority defense.[6]

"If a defendant offers no relevant evidence to support a defense, the court may properly bar its presentation at trial." United States v. Anton, 546 F.3d 1355, 1357 (11th Cir. 2008), cert. denied, 129 S. Ct. 2033 (2009). The defense of public authority is an affirmative defense whereby "the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in a covert activity." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994). However, in order for a defendant to avail himself of this defense, the government official must have actual authority to authorize the defendant to perform the acts in question. Id.; United States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998). This Court has held that it is not a viable defense to rely on the apparent authority of a government agent, as such a misunderstanding constitutes a mistake of law. See United States v. Anderson, 872 F.2d 1508, 1515-16 (11th Cir. 1989).

At the evidentiary hearing, Wade presented absolutely no evidence whatsoever that Officer Matthews, a patrol officer in Saraland, Alabama, had any

---

[6] We generally review a district court's grant of a government's motion in limine for abuse of discretion. United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994). Any conclusions of law made by the district court in granting the motion in limine, however, are reviewed de novo. Id. Findings of fact shall not be set aside unless clearly erroneous. Id.

authority to sanction Wade to act in an undercover capacity in Mobile, Alabama. To the contrary, the government presented the testimony of Officer Matthews and Sergeant Phillips that Matthews had no such authority. Accordingly, the district court did not abuse its discretion in precluding Wade's public authority defense from being presented to the jury.

Wade's counseled brief on appeal mainly raises error as to the issue of public authority defense. To the extent Wade makes a separate claim that the district court's evidentiary rulings at trial about the substance of his conversations with Officer Matthews denied him due process, Wade has not articulated what else Wade and Officer Matthews would have testified to regarding their conversations, and how such testimony would have assisted Wade's defense or changed the outcome of his trial. Moreover, the trial transcript reveals that Wade was allowed to testify extensively that he called Agee back "[t]o set him up with Kenny Matthews . . . to bust him for selling drugs," and the reasons for his involvement in the drug transaction. Officer Matthews was allowed to testify regarding his interactions with Wade about prior methamphetamine drug activity, the subsequent methamphetamine arrests, and that after talking with Wade in April 2009, he attempted to contact a narcotics officer for the City of Saraland. Wade has not shown what else his testimony regarding the content of his conversation with

13

Officer Matthews would have added.  Alternatively, Wade has not shown how such additional testimony would have made a difference in the outcome of his trial. Accordingly, Wade has shown no reversible error in this regard.

## B.      Denial of Motion for New Trial

Wade also argues that the district court erred in denying his motion for a new trial based on Nathaniel Agee's false testimony (that he did not have a daughter) in violation of Wade's Fifth Amendment right to due process.

To prevail on a new trial claim based on false testimony, the defendant "must establish that the prosecutor 'knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony,' and that the falsehood was material."  Tompkins v. Moore, 193 F.3d 1327, 1339 (11th Cir. 1999).  Such a claim is commonly known as a Giglio claim.[7]  Id.; see Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972).  For the purposes of a Giglio claim, "the falsehood is deemed to be material if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  Tompkins, 193 F.3d at 1339 (quotation marks omitted).

---

[7]We review a district court's denial of a motion for a new trial based on a Giglio violation for abuse of discretion.  See United States v. Isaac Marquez, 594 F.3d 855, 859-60 (11th Cir.), cert. denied, 130 S. Ct. 3373 (2010).

14

When Agee's testimony during Agee's sentencing hearing conflicted with his prior trial testimony in Wade's trial, the government immediately notified Wade's defense counsel of the discrepancy. On appeal, Wade argues that at the time that Agee testified at Wade's trial, "[o]bviously a Pre-Sentence Investigation Report had been completed pursuant to federal criminal procedure" in connection with Agee.

In its response brief on appeal, the government concedes that the United States had a copy of Agee's PSI which stated that Agee had a daughter. Based on the current state of the record, however, Wade has not shown the trial prosecutor purposely or knowingly withheld this information from Wade's defense counsel.

Alternatively, Wade has failed to show a reasonable likelihood that Agee's false testimony about his daughter could have affected the judgment of the jury. Wade contends that exposing Agee's false testimony during cross-examination regarding his daughter would have undermined the credibility of the government's main witness. However, the record reveals that Wade's defense counsel was able to cross-examine Agee thoroughly. Wade's defense counsel impeached Agee's credibility by eliciting testimony about Agee's two prior felony convictions for receiving stolen property and trafficking in cocaine, his arrest on October 28, 2009 for attempt to possess cocaine, and his subsequent plea agreement under which he

15

agreed to cooperate with the authorities in exchange for the government's motion for a reduction in his sentence. Agee testified that on December 5, 2008, Wade sent Agee $500 as partial payment for a prior drug transaction. Wade's defense counsel elicited Agee's admission that, ten days later, after agreeing to cooperate fully with the authorities and disclose all information regarding his drug activities, Agee failed to include this transaction in his statement to authorities. The fact that Agee also lied about having a daughter would have added little to the defense counsel's thorough cross-examination.

Moreover, the evidence presented at trial supporting Wade's conviction was substantial, including undisputed evidence that Wade exchanged the gun and vehicle title for a kilogram of cocaine and then was arrested with the cocaine in his possession. For these reasons, we cannot say that there is a reasonable likelihood that Agee's false testimony about his daughter could have affected the judgment of the jury. See Tompkins, 193 F.3d at 1339.

## IV. CONCLUSION

For the reasons given above, we affirm Wade's cocaine conviction.

**AFFIRMED.**

16