[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14086
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00319-SDM-JSS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FAYEZ ABU-AISH,
NEDAL ABU-AISH,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(December 21, 2018)

Before NEWSOM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Fayez Abu-Aish and Nedal Abu-Aish appeal their convictions and sentences of imprisonment for conspiring to possess with intent to distribute a mixture containing XLR-11, a synthetic cannabinoid, in violation of 21 U.S.C. § 846 (count one), and for intentionally distributing that mixture, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(C), and 18 U.S.C. § 2 (counts two and three). The brothers raise four issues on appeal. First, they argue that insufficient evidence supports the jury's finding that the Abu-Aishes knowingly or intentionally committed crimes involving XLR-11 in particular. Second, they contend that the district court erred in permitting a witness to testify that substantial quantities of acetone could be used to manufacture explosives; in particular, the brothers assert that explosives had no bearing on the alleged crimes and that given their Middle Eastern descent such testimony was likely to prejudice the jury. Third, the Abu-Aishes maintain that the district court abused its discretion in granting the government's motion *in limine* to exclude evidence showing that the government had returned money to the brothers that it had originally seized as suspected drug proceeds. Finally, they argue that the district court abused its discretion during sentencing: first, by favoring the conclusion of the government's expert witness that, pursuant to the sentencing guidelines, XLR-11 should be treated as if it were THC, and second, by determining the amount of marijuana equivalency by combining the weight of pure XLR-11 with the weight of the combination of XLR-

2

11, acetone, and inert plant material that comprised the finished product.  We address each contention in turn.

## I

We review challenges to the sufficiency of evidence for conviction *de novo*, viewing the evidence in the light most favorable to the government, *United States v. Acosta*, 421 F.3d 1195, 1197 (11th Cir. 2005), and drawing all reasonable inferences in favor of the jury's verdict.  *United States v. Hunt*, 526 F.3d 739, 744 (11th Cir. 2008).  "A factual finding will be sufficient to sustain a conviction if . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007) (internal quotation marks omitted).  This standard does not require the evidence to be "inconsistent with every reasonable hypothesis other than guilt."  *Hunt*, 526 F.3d at 745.  Instead, we permit the jury to choose among the reasonable conclusions that can be drawn from the evidence.  *Id.*

The Abu-Aishes center their argument on this Court's holding in *United States v. Narog*, 372 F.3d 1243 (11th Cir. 2004).  The indictment in *Narog* charged the defendants with having possessed and distributed pseudoephedrine, having known that it would be used to manufacture a controlled substance, "that is, methamphetamine."  *Id.* at 1247.  During deliberations, the jury asked whether the defendant had "to have knowledge or reasonable cause to believe the

3

pseudoephedrine would be used to make *specifically* methamphetamine to be guilty?" *Id.* The courted responded, "The answer to your question is no." Notwithstanding the indictment's specific reference to methamphetamine, the district court instructed that "the government need not prove that a Defendant knew or had reasonable cause to believe the exact nature of the controlled substance to be manufactured." *Id.* We reversed, holding that the district court had constructively amended the indictment, broadening it beyond the narrowing language of "that is, methamphetamine." *Id.* at 1248–49. The Abu-Aishes argue that in *Narog*, as here, the indictment identified a specific substance; and therefore here, as in *Narog*, the government must prove its allegations with reference to XLR-11 in particular.

The Abu-Aishes' argument is equal parts true and irrelevant. The jury did not convict them for possessing or distributing a generic substance but rather XLR-11. The district court never broadened their indictment in a manner analogous to that in *Narog*. The question is thus whether—viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in favor of the jury's verdict—a rational trier of fact could have found that the Abu-Aishes knew they were working with XLR-11. The evidence presented indicated that Fayez and Nedal manufactured and packaged significant quantities of product in a clandestine lab, sold it out of trash bags on the street, and had suggested to a buyer

4

(an undercover officer) that he should avoid being caught with the product.  This evidence supported the jury's finding that the brothers knowingly dealt with *a* controlled substance.

The government also had to show, of course, that the brothers knowingly dealt with *the* controlled substance of XLR-11.  In *United States v. Clay*, we noted that although "the government's evidence of [the requisite mens rea] was circumstantial . . . guilty knowledge can rarely be established by direct evidence." 832 F.3d 1259, 1309 (11th Cir. 2016) (internal quotation marks omitted), *cert. denied*, 137 S. Ct. 1814 (2017).  Thus, "[m]ens rea elements such as knowledge or intent may be proven by circumstantial evidence."  *Id.*  We find that a reasonable juror could infer from the substantial circumstantial evidence presented that Fayez and Nedal knew that the mixture that they possessed and distributed contained XLR-11.

## II

We ordinarily review a district court's decision to admit evidence for abuse of discretion.  *United States v. Jernigan*, 341 F.3d 1273, 1284 (11th Cir. 2003). But where the defendants do not contemporaneously object to the introduction of the challenged evidence, "it is well-settled" that we review only for plain error. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007).  In *United States v. Olano*, 507 U.S. 725, 734 (1993), the Supreme Court identified three limitations on

5

an appellate court's plain-error review under Rule 52 of the Federal Rules of Criminal Procedure. "The first limitation on appellate authority under Rule 52(b) is that there indeed be an 'error,'" *id.* at 733, which generally entails deviation from a legal rule. Second, the error must be "plain," meaning "clear" or "obvious." *Id.* at 734. The error must be so clear and obvious that the trial court should not have permitted it, even without the defendant's timely assistance in detection. *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (per curiam). Finally, the error must "affect substantial rights,"—that is, the error "must have been prejudicial: It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734; *see also Molina-Martinez v. United States*, 136 S. Ct. 1338, 1339 (2016) (requiring the defendant to show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different") (internal quotation marks omitted).

The *Olano* Court summarized, "[t]he Court of Appeals should correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." 507 U.S. at 736 (internal quotations and modifications omitted). We do not find any error here, much less one seriously affecting the proceedings in such a manner. The witness's passing reference to explosives did not inject ethnicity, terrorism, or any other inflammatory content into the case. He mentioned explosives in the context of

6

explaining why the purchase of hundreds of gallons of acetone might warrant further investigation.  The district court therefore did not plainly err by failing to *sua sponte* exclude this testimony.

### III

We review a district court's grant of a motion *in limine* submitted by the government for abuse of discretion.  *United States v. Thompson*, 25 F.3d 1558, 1563 (11th Cir. 1994).  "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact."  *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008) (quoting *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005).  Although courts generally should not prohibit defendants from presenting a theory of defense to the jury, *Thompson*, 25 F.3d at 1564, a relevant factual basis for the defense must exist under Federal Rules of Evidence 401 and 402.  Evidence is relevant under Rule 401 if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.[1]

The indictment charged the Abu-Aishes with possessing and distributing XLR-11.  The evidence that the government sought to exclude indicated that the

---

[1] Rule 402 states that "[r]elevant evidence is admissible unless" a list of authorities (e.g. the United States Constitution) provides otherwise.  Fed. R. Evid. 402. None of the listed authorities excludes the evidence at issue here.

7

government had returned money that it seized from the Abu-Aishes, originally taken on the suspicion that the money derived from sales of illegal drugs. Although the district court may have exaggerated in suggesting that such evidence had "not one thing in this world to do" with the charges—the money would not have been seized but for the government's suspicions, after all—it did not abuse its discretion in concluding that the decision to return this money did not make it more or less probable that the Abu-Aishes had possessed or distributed XLR-11. The government's decision to return this money could be explained by various rationales, but none would lead to an inference that is probative of the charges here. Thus, we do not find the district court's determination to be "clearly erroneous," "errant," or "improper."

**IV**

When reviewing the district court's findings with respect to the sentencing guidelines, we consider legal issues *de novo*, factual findings for clear error, and the district court's application of the guidelines to the facts with due deference, which we have found is "tantamount to clear error review." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). To be clearly erroneous, the conclusion of the district court must leave us with a "definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). Consequently, "[w]here there are two permissible views of the evidence, the

8

factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

We review the district court's assessment of the reliability of an expert opinion for abuse of discretion. *United States v. Abreu*, 406 F.3d 1304, 1305–06 (11th Cir. 2005) (per curiam). "The district court's decision concerning the competency of, and the weight to be accorded to, the testimony of an expert is a highly discretionary one." *United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999).

Where a controlled substance analogue is not specifically listed in the sentencing guidelines, the base offense level is determined by using the converted drug weight of the most closely related controlled substance that appears in the guidelines. U.S.S.G. § 2d1.1, comment. (n.6). In determining the most closely related controlled substance, the guidelines instruct the courts to consider several factors:

> (A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance reference in this guideline.
>
> (B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.
>
> (C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially

similar effect on the central nervous system as a controlled substance referenced in this guideline.

*Id.*

The district court also had to determine the weight of the "mixture or substance" containing the controlled substance. When doing so, courts must use a "market-oriented" approach, *Chapman v. United States*, 500 U.S. 453, 461 (1991), under which "[t]he entire weight of drug mixtures which are usable in the chain of distribution should be considered in determining the defendant's sentence." *Griffith v. United States*, 871 F.3d 1321, 1335 (11th Cir. 2017). Only "unusable parts [that] must be separated and waste products are not to be considered in the calculations." *Id.*

The district court followed these rules to the letter. Because XLR-11 is not listed in the sentencing guidelines, the district court had to consider expert testimony concerning its most closely related substance. During the evidentiary hearing addressing this question, the parties offered expert witnesses who presented "two permissible views of the evidence" under the factors detailed in the guidelines. The district court found the testimony of the government's expert witness that XLR-11 most closely resembled THC to be more persuasive. That decision "cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.[2] Then, in

---

[2] We also note that it finds support in an unpublished decision from this Court, *United States v. Nahmani*, 696 F. App'x 457, 478–79 & n.26 (11th Cir. 2017), and published case law from our

determining the weight of the controlled substance, the district court combined the weight of the pure XLR-11 that the government had recovered with that of the finished product composed of XLR-11, acetone, and inert plant material. The combination of the pure and composite material amounted to the "[t]he entire weight of drug mixtures," as mandated by the market-oriented approach.

The Abu-Aishes protest that the district court combined apples and oranges. And not without some reason: the Sentencing Commission's November 2018 amendments to the sentencing guidelines support the brothers' objection, to an extent. Because of these amendments' relevance to this appeal, we cite the Commission's prior comments concerning them at length:

> The Commission learned that synthetic cannabinoids are manufactured as a powder or crystalline substance and are typically sprayed on or mixed with inert material (such as plant matter) before retail sale. As a result, a synthetic cannabinoid seized after it has been prepared for retail sale will typically weigh significantly more than the undiluted form of the same controlled substance.
>
> Given the central role of drug quantity in setting the base offense level, an individual convicted of an offense involving a synthetic cannabinoid mixture would likely be subject to a guideline penalty range significantly higher than another individual convicted of an offense involving an undiluted synthetic cannabinoid (but who could nevertheless produce an equivalent amount of consumable product). In a case involving undiluted synthetic cannabinoid, an upward departure may be appropriate for that reason. By contrast, in a case where the mixture containing synthetic cannabinoids contained a high quantity of inert material, a downward departure may be warranted.[3]

---

sister circuits. *See, e.g.*, *United States v. Novak,* 841 F.3d 721, 730 (7th Cir. 2016).

[3] Application Note 27(E)(i) now states: "[T]here may be cases in which the substance involved in the offense is a synthetic cannabinoid not combined with any other substance. In such a case,

11

Amendments to the Sentencing Guidelines 16 (April 30, 2018).

The recent amendments to the sentencing guidelines are unavailing for the Abu-Aishes for several reasons.  First, the amendments had not even been proposed at the time of their sentencing.  The district court's failure to abide by the Commission's recommendation was therefore not clearly erroneous.  Second, it is not clear that the amended text calls for decreasing their sentence.  The Commission only suggests a downward departure "where the mixture containing synthetic cannabinoids contained a high quantity of inert material."  *Id.*  We cannot say whether the inert plant material that the brothers combined with XLR-11 would cross this "high" threshold—nor, conversely, whether "an upward departure [might have been] appropriate," given that the district court's calculation also included several kilograms of pure XLR-11.  Finally, regarding retroactivity, the Commission's policy statement on retroactive reduction of sentences provides, in relevant part:

> (a)(2) Exclusions.—A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if—(A) None of the amendments listed in subsection (d) is applicable to the defendant . . .

> (d) Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130, 156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461,

---

an upward departure would be warranted.  There also may be cases in which the substance involved in the offense is a mixture containing a synthetic cannabinoid diluted with an unusually high quantity of base material.  In such a case, a downward departure may be warranted." U.S.S.G. § 2D1.1, comment. (n.27(E)(i)).

12

484, 488, 490, 499, 505, 506, 516, 591, 599, 606, 657, 702, 706 as amended by 711, 715 (parts A and C only), and 782 (subject to subsection (e)(1)).

U.S.S.G. § 1B1.10.  The Abu-Aishes rely on amendments to the guidelines introduced by Amendment 807.  Because this amendment does not appear in the list provided in the Commission's policy statement, it cannot afford the brothers retroactive relief.

## V

The Abu-Aishes raised four arguments.  After careful review, we find that none merits overturning the jury's decision, the district court's evidentiary determinations at trial, or the district court's conclusions during sentencing. Accordingly, we affirm.

**AFFIRMED.**

13